**Bettina L. WYMAN, Plaintiff**
**vs.**
**BROOKLINE SAVINGS BANK,**
**Defendant**

**No. 125990**

Superior Court
Commonwealth of Massachusetts

**December 9, 1981**

</div>

**David C. Hawkins and Withington, Cross, Park & Groden,** counsel for plaintiff.

**Richard A. Freedman,** counsel for defendant.

## FINDINGS OF FACT, RULINGS OF LAW AND ORDER FOR JUDGMENT

### Introduction

The plaintiff Bettina L. Wyman ("Wyman"), trustee of the Wyman Six Trust, by her complaint which commenced this action seeks recovery of a so-called "prepayment penalty" which she paid under protest to the defendant Brookline Savings Bank ("the Bank") at the time of her pay-off and the Bank's discharge of Wyman's note and mortgage to it in advance of the maturity date of the note and mortgage. Wyman's complaint as amended raises a number of grounds for relief, namely: (1) breach of contract; (2) violation of G.L.c. 140C and of the provisions of the so-called federal Truth-in-Lending Act, 15 U.S.C. § 1601

et seq.; and (3) violation of the Massachusetts Consumer Protection Act, G.L.c. 93A.

**Facts**

The parties have stipulated that the following are "all the material and ultimate facts upon which the rights of the parties depend (and that) no inferences are to be drawn from these facts".

By a form letter, and an addendum thereto, each dated May 2, 1972, the Bank made a commitment to loan the amount of $500,000 for twenty years and nine months to the Wyman Six Trust provided that the terms of the commitment were accepted by the Trust. (Exhibits 1 and 2). The terms of the commitment were accepted by Richard M. Wyman, Jr., as trustee of the Trust ("Wyman") on May 24, 1972. There was no reference to prepayment of the loan in either the May 2, 1972 form letter or the addendum thereto. The May 2, 1972 form letter indicates in part "this transaction is subject to all provisions of the Federal Truth in Lending Law."

On October 12, 1972, Wyman borrowed $500,000 from the Bank and pursuant to the terms of a mortgage note dated that date (Exhibit 3) obligated himself as trustee to repay that loan in twenty years and nine months. That note provided in part that "the entire indebtness evidenced by this note or secured by the mortgages given to secure this note shall, at the option of the holder, become due and payable, together with any premium otherwise payable upon voluntary prepayment made at such time, in the event that title to the mortgaged premises shall be transferred by the mortgagor..." As security for that loan Wyman gave to the Bank a mortgage and security agreement (Exhibit 4) which contains an almost identical provision. Neither the mortgage note nor the mortgage and security agreement contains any reference to the "Federal Truth in Lending Law." The parties have stipulated that the loan was a credit transaction involving an extension of credit for business or commercial purposes.

On September 7, 1978 the Bank required that a prepayment penalty be paid before it would accept an early pay-off of its loan to Wyman and discharge Wyman's note and mortgage to it. On that date the loan was paid off and Wyman under protest paid a prepayment penalty to the Bank in the amount of $8,980.00. On October 17, 1978 the Bank cancelled the note and discharged the mortgage.

**Rulings of Law**

Absent a specific provision in a note and/or mortgage permitting it, a borrower or mortgagor cannot compel his or her lender or mortgagee to accept payment of a term loan prior to its maturity. G. Osborne, G. Nelson, and D. Whitman, **Real Estate Finance Law,** Section 6.1, at 371 (1979). See, **Trahant v. Perry** 253 Mass. 486, 489 (1925) (lender cannot compel borrower to accept payments before maturity); **Silva v. Turner,** 166 Mass. 407, 411 (1890) (mortgagee not bound to accept prepayment of principal prior to due date). Nevertheless, most mortgages either pursuant to an express provision in a loan agreement, a note and/or mortgage, or as subsequently often agreed to, permit prepayment of a term loan upon payment of a so-called "penalty". The mortgage note here, as a matter of fact (see the language excerpted above) and law, may be prepaid by Wyman solely and only at the option of the Bank, which if it permits such prepayment has the privilege of establishing on what terms and in what amount a prepayment penalty shall be required. A prepayment penalty established by a lender, unless unconscionable, will be enforced. See, **Renda v. Gouchberg,** 4 Mass. App. Ct. 786, 786 (1976) (prepayment penalties are enforceable.) Wyman's arguments, with respect to lack of contractual basis for what the Bank did here, are defeated both by current legal principals applicable thereto and by the relevant language excerpted above from the note and mortgage.

With respect to Wyman's claims under the federal Truth-in-Lending Act, ("the

Act"), 15 U.S.C. § 1601 **et seq.**, I note initially that pursuant to the Act a creditor must fully disclose the details of financial penalties for consumer credit.[1] See, 12 C.F.R. 226.1(2), 266.6. The Act is not **per se** applicable to extensions of credit "for business or commercial purposes." 15 U.S.C. § 1603(1). See, **Lammerding v. Shawmut Community Bank, N.A.,** Mass. App. Ct. Adv. Sh. (1980) 737, 738 (business loans not within 'ambit of the Act). In this action the parties have stipulated that the Bank's loan to Wyman was for "business and commercial purposes". Accordingly, full disclosure of any prepayment penalty by the Bank was and is not required here. As noted above, Exhibit 1, a form letter, states in part that "this transaction is subject to all provisions of the federal Truth-in-Lending Law". The only commonsensical interpretation of that language is that the Act is applicable to the transaction between the Bank and Wyman only if the transaction is subject to the Act, which it is not. Thus, I rule that the language "(i)n any transaction subject to this (Act)...(a) description of any penalty charge that may be imposed by the creditor or his assignee for prepayment of the principal of the obligation (such as a real estate mortgage) (must be set forth) with an explanation of the method of computation of such penalty and the conditions under which it may be imposed," 12 C.F.R. 226.8(b)(6), is not applicable here. G.L.c. 140C, which pursuant to section 2(a) thereof is not applicable to extensions of credit for business or commercial purposes, is clearly not relevant here.

With respect to Wyman's G.L.c. 93A claim, section 11 thereof provides that a businessman who suffers a loss of money or property as a result of the unfair trade practice of another businessman may recover the amount of actual damages suffered. If a court further finds that the unfair trade practice was a willful and knowing violation of section 2, it may award double or treble damages. G.L.c. Chapter 93A, § 2. In determining what constitutes an unfair trade practice, a court must look for conduct which is within the realm of common-law, statutory, or other established concepts of unfairness, and which is immoral, unethical, oppressive, or unscrupulous. **Levings v. Forbes & Wallace, Inc.,** Mass. App. Ct. Adv. Sh. (1979) 2043, 2050. The objectionable conduct must obtain a level of "rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." **Id.** If what the Bank did here is permitted by law, as it is, Wyman clearly cannot recover pursuant to G.L.c. 93A.

**Order for Judgment**

For the reasons stated above, judgment is ordered to enter for the defendant.

**Paul G. Garrity**
**Justice of the Superior Court**

---

1. Consumer credit within the Act means credit offered to a natural person in which money, property, or service which is the subject of the transaction is "primarily for personal, family, household, or agricultural purposes". 12 C.F.R. 266.2(p).